# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| Tyrone Mosley, | Civil Action No.: 1:16-cv-00383-JMC |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Quicken Loans, Inc., | |
| Defendant. | |

Plaintiff Tyrone Mosley filed the above-captioned action against Defendant Quicken Loans, Inc. alleging claims for violation of the South Carolina Attorney Preference Statute ("SCAPS"), S.C. Code § 37-10-102 (2017), in the context of a mortgage loan closing. (ECF No. 1-1 at 7 ¶ 5–8 ¶ 12.)

This matter is before the court on Plaintiff's and Quicken Loans' Cross-Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF Nos. 71, 74.) The parties oppose each other's Motions respectively. (ECF Nos. 82, 87.) For the reasons set forth below, the court **GRANTS** Quicken Loans' Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I. RELEVANT BACKGROUND TO PENDING MOTIONS

Quicken Loans "is a nationwide online mortgage lender that provides, among other things, residential mortgage loan refinances." *Boone v. Quicken Loans, Inc.*, 803 S.E.2d 707, 709 (S.C. 2017). "Under the Quicken Loans refinance procedure, the borrowers have already purchased the property and are simply seeking a new mortgage loan (presumably with more favorable terms) to replace the existing loan." *Id.*

On January 23, 2013, Plaintiff provided information to Quicken Loans for purposes of completing a loan application to refinance the mortgage on his primary residence located at 225

Bennett Street, Williston, South Carolina 29853.[1] (ECF Nos. 71-1 at 11:6–22, 71-3 at 2 & 71-5 at 3 ¶ 5.) As a result of the information provided by Plaintiff, Defendant generated loan application documents that were made available to Plaintiff via Quicken Loans' internet web portal. (ECF No. 71-5 at 3 ¶ 5.) In addition to the loan application package, Quicken Loans included an Attorney/Insurance Preference Checklist (the "AIPC"). (*Id.*; *see also* ECF No. 1-1 at 8 ¶ 11.) Based on the information provided by Plaintiff, the AIPC was prepopulated with the following relevant information (in bold):

1. I (We) have been informed by the lender that I (we) have a right to select legal counsel to represent me(us) in all matters of this transaction relating to the closing of this loan.

    (a) I select **I/We will not use the services of legal counsel**.
s/**Tyrone Mosley**
**Electronically signed on 1/23/2013 4:15:46 PM**
Borrower **Tyrone Mosley**         Date    Borrower                              Date

Borrower                              Date    Borrower                              Date

    (b) Having been informed of this right, and having no preference, I asked for assistance from the lender and was referred to a list of acceptable attorneys. From that list I select

**Not Applicable**                            **Not Applicable**
Borrower                              Date    Borrower                              Date
**Not Applicable**                            **Not Applicable**
Borrower                              Date    Borrower                              Date

(ECF No. 71-6 at 2.)

On January 23, 2013, Plaintiff electronically signed the loan application documents and the AIPC and transmitted them to Quicken Loans via its internet web portal. (*Id.*; *see also* ECF No. 71-5 at 3 ¶ 6.) On April 1, 2013, Plaintiff had a telephone conversation with a Quicken Loans' representative to discuss the details of the loan closing, including who would be in

---

[1] Plaintiff had prior experience with the loan application process having refinanced various properties. (*See, e.g.*, ECF No. 71-1 at 4:7–18.)

attendance. (ECF No. 71-5 at 3 ¶ 7.) Thereafter, Plaintiff was contacted by attorney Stacey E. (Pope) Besser ("Besser") and they discussed issues relevant to the closing. (ECF No. 71-8 at 3 ¶ 6.) On April 5, 2013, Plaintiff signed a disclosure form agreeing to the terms of Besser's representation at the loan closing and closed the loan. (ECF No. 71-8 at 3 ¶ 7, 4–5.)

On November 11, 2015, Plaintiff filed a Complaint against Quicken Loans in the Court of Common Pleas for Barnwell County, South Carolina alleging violation of the SCAPS.[2] (ECF No. 1-1 at 9 ¶ 12.) After Quicken Loans removed the case to this court (ECF No. 1), the parties engaged in and completed discovery on March 1, 2017. (ECF No. 36.) Quicken Loans then moved for summary judgment on March 31, 2017. (ECF No. 71.) On that same day, Plaintiff filed his Cross-Motion for Summary Judgment. (ECF No. 74.)

The court heard argument from the parties on the instant Motions at a hearing on December 5, 2017. (ECF No. 128.)

## II. JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) based on Quicken Loans' allegations that there is complete diversity of citizenship between Plaintiff and Quicken Loans, and the amount in controversy herein exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs. (ECF No. 1 at 2.) Quicken Loans is a corporation organized under the laws of Michigan with its principal place of business in Detroit, Michigan. (ECF No. 1-3 at 3 ¶ 5.) Plaintiff is a citizen and resident of Barnwell County, South Carolina. (ECF No. 1-1 at 7 ¶ 1.) Moreover, the court is satisfied that the amount in controversy exceeds $75,000.00 in accordance with Defendant's representation. (ECF No. 1

---

[2] A plaintiff enforces a violation of the SCAPS through S.C. Code § 37-10-105(A). In addition to his attorney preference claim, Plaintiff also alleged his entitlement to relief under S.C. Code §§ 37-10-105, -108, based on unconscionability. The court dismissed this claim on June 30, 2016. (ECF No. 26.)

at 3–10.)

## III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

## IV. ANALYSIS

A. <u>The Parties' Arguments</u>

*1. Plaintiff*

In his Motion for Summary Judgment, Plaintiff asserts that Quicken Loans violates section 37-10-102 by failing "to ascertain the preference of the South Carolina borrower that

results in the attorney at the closing table not being selected by the borrower, a practice that deprives the South Carolina borrower of a statutorily guaranteed right." (ECF No. 74-1 at 10–11.) Specifically, Plaintiff asserts that asking the question "Will the borrower select legal counsel to represent them in this transaction?" does not satisfy the statute which "mandates that the creditor '…must ascertain prior to closing the preference of the borrower as to the legal counsel that is employed to represent the debtor in all matters related to the closing of the transaction . . . .'" (*Id.* at 11.) Quicken Loans "must do more than disclose to the borrower; the lender must elicit certain specific information from the borrower." (ECF No. 88 at 2.) In this regard, Quicken Loans' "form fails to ascertain the preference of the borrower if it is already prepopulated with 'I/we will not use the services of legal counsel.'" (ECF No. 87 at 5.) Accordingly, Plaintiff argues that Quicken Loans' form "violates the statute and operates as an illegal waiver of the right to be represented by any attorney, much less the consumer's choice of legal counsel." (ECF No. 74-1 at 16.)

   *2. Quicken Loans*

In its Motion for Summary Judgment, Quicken Loans asserts that the purpose of the SCAPS is "to protect borrowers by requiring in the credit application clear and prominent disclosure of the information necessary to ascertain the borrower's preference as to the legal counsel employed to represent the debtor in all matters relating to the closing of the transaction[.]" (ECF No. 71 at 10 (quoting *Davis v. NationsCredit Fin. Servs. Corp.*, 484 S.E.2d 471, 472 (S.C. 1997))). Quicken Loans further asserts that "a lender substantially complies with section 37-10-102 if the borrower receives a clear and prominent disclosure of the statutorily required information." (*Id.* at 11 (quoting *Davis*, 484 S.E.2d at 472).) Based on the foregoing, Quicken Loans argues that it complied with the SCAPS because it "clearly and prominently

5

disclosed to Plaintiff that he had the right to express a preference for an attorney and gave him numerous opportunities to express a preference." (*Id.*) In support of its argument, Quicken Loans points out that the AIPC required Plaintiff to sign acknowledging that he has "been informed by the lender that I (we) have a right to select legal counsel to represent me(us) in all matters of this transaction relating to the closing of this loan." (ECF No. 71-6 at 2.)

Additionally, Quicken Loans argues that it has satisfied the safe harbor provisions of section 37-10-102 as to Plaintiff by providing written notice of the preference information on the AIPC within one business day. (ECF No. 71 at 15.)

B. The Court's Review

Plaintiff brings his action pursuant to the SCAPS, which provides in pertinent part:

Whenever the primary purpose of a loan that is secured in whole or in part by a lien on real estate is for a personal, family or household purpose:

(a) The creditor must ascertain prior to closing the preference of the borrower as to the legal counsel that is employed to represent the debtor in all matters of the transaction relating to the closing of the transaction . . . .

The creditor may comply with this section by:

(1) including the preference information on or with the credit application so that this information shall be provided on a form substantially similar to a form distributed by the administrator; or

(2) providing written notice to the borrower of the preference information with the notice being delivered or mailed no later than three business days after the application is received or prepared. If a creditor uses a preference notice form substantially similar to a form distributed by the administrator, the form is in compliance with this section.

S.C. Code § 37-10-102(a) (2017). Plaintiff asserts Quicken Loans violated the SCAPS in the following particulars:

> The Attorney/Insurance Preference Form utilized by Quicken is essentially the form recommended by the Department of Consumer Affairs.[3] It is what Quicken does with the form before it is presented to the borrower that runs afoul of the law. The pre-populated Attorney/Insurance Preference Form is in and of itself violative of the very statute that the underlying form is intended to facilitate. By effectively foreclosing the borrower's choice when taking the loan application – the very first step in a real-estate-secured loan transaction–Quicken closes the door on the consumer and taints the entire process that follows. This alone is sufficient to warrant a ruling as a matter of law and the entry of summary judgment.

(ECF No. 74-1 at 17.)

Neither Plaintiff nor Quicken Loans have cited, and the court has not located, a South Carolina appellate court case addressing this precise issue.[4] "Thus, as a federal court sitting in diversity, the [c]ourt must predict how the South Carolina Supreme Court would decide the issue." *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, C/A No.: 4:16-cv-03666-RBH, 2017 WL 2216298, at *5 (D.S.C. May 19, 2017) (citing *Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002) ("As a federal court sitting in diversity, we have an obligation to apply the jurisprudence of South Carolina's highest court, the South Carolina Supreme Court. But in a situation where the South Carolina Supreme Court has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue." (internal footnote and citations omitted))). "In predicting a ruling by the South Carolina Supreme Court, [the Court] may also consider, inter alia: restatements of the law, treatises, and well considered dicta," *id.*, "as well as the practices of other states." *Id.* (quoting *St. Paul Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 365 F.3d 263, 272 (4th Cir. 2004) (internal quotation marks omitted)). While it does not appear that this specific issue has been addressed by the South Carolina appellate courts, the South

---

[3] *See* Admin. Interpretation No. 10.102(a)-9301 (S.C. Dep't Consumer Affairs Sept. 7, 1993).
[4] Additionally, neither Plaintiff nor Quicken Loans has requested certification of this issue to the South Carolina Supreme Court.

7

Carolina Supreme Court has reasoned in construing this provision that "[o]ur construction of legislative intent flows from the clear language of the statute . . ." and that such intent is to protect borrowers. *King v. Am. Gen. Fin., Inc.*, 687 S.E.2d 321, 325 (S.C. 2009).

The SCAPS requires the lender to ascertain the preference of the borrower as to legal counsel. "'[A]scertain' means 'to render certain or definite . . . to clear of doubt or obscurity . . . to find out by investigation.'" *Parker v. Cty. of Oxford*, 224 F. Supp. 2d 292, 295 (D. Me. 2002) (quoting *Black's Law Dictionary* 114 (6th ed. 1990)); *see also Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 609 (5th Cir. 2018) ("'Ascertain' means 'to make certain, exact, or precise' or 'to find out or learn with certainty. . . ' [t]hus, 'ascertain' requires 'a greater level of certainty . . . .'") (citation omitted). In considering the requirements of the SCAPS, the court observes that the parties have not presented any dispute of fact regarding Quicken Loan's attorney preference procedure in this matter. Therefore, the matter is ripe for summary judgment.

Upon review, the court is persuaded that Quicken Loans did ascertain Plaintiff's attorney preference in compliance with the SCAPS. First, an agent of Quicken Loans asked Plaintiff if he would be using "the services of preferred legal counsel." (ECF No. 71-5 at 3 ¶ 5.) After receiving Plaintiff's response that he did not have counsel of preference, Quicken Loans (1) sent Plaintiff an AIPC that advised him that he has "a right to select legal counsel to represent me(us) in all matters of this transaction relating to the closing of the loan" and (2) prepopulated the AIPC with the statement "I/We will not use the services of legal counsel." (ECF No. 71-6 at 2.) Upon receipt of the AIPC, Plaintiff reviewed it, electronically signed it and electronically transmitted the document back to Quicken Loans. (*Id.*) There is no evidence before the court that Plaintiff had any questions about the content of the AIPC. *Cf. Floyd v. Nationwide Mut. Ins. Co.*, 626 S.E.2d 6, 12 (S.C. 2005) ("[A] competent person usually is presumed to have

knowledge and understanding of a document he signs, absent evidence his signature was obtained by misrepresentation, fraud, forgery, or duress.") (citations omitted). Thereafter, Plaintiff had approximately ten weeks, from January 23, 2013, to before the loan closing on April 5, 2013, to express an attorney preference to Quicken Loans, which he did not do. Moreover, Plaintiff did not voice any disagreement with the attorney (Besser) representing him or question her actions as counsel.[5] (ECF No. 71-8 at 3 ¶ 8 ("If Mr. Mosley had raised any concerns about my (Besser) representation of him in the transaction before or during the closing, I (Besser) would have stopped the transaction.").)

Based on the foregoing, the court predicts that the South Carolina Supreme Court would conclude that Quicken Loans did "ascertain . . . the preference of the borrower as to [] legal counsel . . . relating to the [instant] closing . . ." in compliance with the SCAPS.[6] Accordingly, the court **GRANTS** Quicken Loans' Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## V. CONCLUSION

Upon careful consideration of the entire record and the parties' arguments, the court hereby **GRANTS** Quicken Loans' Motion for Summary Judgment (ECF No. 71) and **DENIES** Plaintiff's Motion for Summary Judgment. (ECF No. 74.) As a result of the foregoing, all remaining pending motions are **DENIED AS MOOT**. (ECF Nos. 95, 96.)

---

[5]   Q.   When you say "she," that's Stacey Pope [Besser]?
      A.   Right.
      Q.   Do you recall if you asked any questions during the closing?
      A.   No, I didn't ask any questions.  (ECF No. 71-1 at 13:10–14.)

[6] As a result of this finding, the court will not address whether Quicken Loans has satisfied the safe harbor provisions of the SCAPS.

**IT IS SO ORDERED**.

_J. Michelle Childs_
United States District Judge

March 9, 2018
Columbia, South Carolina